**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 16-cr-20039-BLOOM**

UNITED STATES OF AMERICA,

    Plaintiff,
v.

WOODROW ALBERT STARLING,

    Defendant.
_____/

## ORDER ON MOTION FOR COMPASSIONATE RELEASE

**THIS CAUSE** is before the Court upon Woodrow Albert Starling's ("Defendant") Motion for Compassionate Release, ECF No. [48] ("Motion"), filed on October 29, 2020. The Government filed its Response, ECF No. [49], to which Defendant has filed a Reply, ECF No. [50]. The Court has carefully reviewed the Motion, all opposing and supporting submissions, any relevant exhibits, the record in this case and the applicable law, and is otherwise fully advised, for the reasons discussed below, the Motion is granted.

**I.  BACKGROUND**

On January 21, 2016, Defendant was charged by indictment with possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g), 924(e) ("Armed Career Criminal Act" or "ACCA"), which charge carried a 15-year mandatory minimum. ECF Nos. [6], [10]. As a result of plea negotiations, the Government filed a superseding information, ECF No. [24], charging Defendant with possession of a stolen firearm in violation of 18 U.S.C. § 922(j), in exchange for Defendant's agreeing to a joint recommendation to the Court of a 120-month sentence. Plea Agreement, ECF No. [31]. On April 25, 2016, Defendant was sentenced to a term

of imprisonment of 120 months, followed by 2 years of supervised release. *See* ECF Nos. [37], [38]. Defendant is currently housed at FCI Marianna, in Marianna, Florida.

In the Motion, Defendant requests a reduction in his sentence to time served with a period of home confinement imposed as a special condition of supervised release. Due to the ongoing COVID-19 pandemic, Defendant contends his underlying medical conditions put him at an increased risk of serious illness or death should he contract the virus.

The Government opposes the Motion, arguing that compassionate release is not warranted because the § 3553(a) factors do not support a sentence reduction, and Defendant remains a danger to the community.

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with 22,102,069 confirmed cases and 371,084 reported deaths as of January 10, 2021.[1] The COVID-19 pandemic poses a serious danger to society at large. Moreover, COVID-19 poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices.

As a result of this dynamic, unpredictable, and unprecedented situation, Attorney General William Barr has urged the Bureau of Prisons ("BOP") to move vulnerable inmates out of penal institutions and into home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly

---

[1] *Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Jan. 10, 2021).

affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The Attorney General has made the express finding that extant emergency conditions are materially affecting BOP functioning and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II.     LEGAL STANDARD

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir. 2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

Defendant seeks relief specifically under the compassionate release provision, § 3582(c)(1)(A), which states:

> (c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
>     (i) extraordinary and compelling reasons warrant such a reduction . . . .
>     . . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

As has been recognized by various courts, the Sentencing Commission has not implemented a new policy statement following the First Step Act. *See United States v. Brown*, 411 F. Supp. 3d 446, 449 n.1 (S.D. Iowa 2019) (collecting cases)). Rather, the existing policy statement still assumes compassionate release "may be granted only upon motion by the Director of the Bureau of Prisons." § 1B1.13, cmt. n.4. As noted by one district judge in *Brown,* "[T]his leaves

district courts in a conundrum. On the one hand, Congress unequivocally said it wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with *applicable* policy statements" from the Sentencing Commission. § 3582(c)(1)(A) (emphasis added). On the other hand, the Commission—unable to take any official action—has not made the policy statement for the old regime applicable to the new one." *Id.*

While the Eleventh Circuit has yet to address the issue, four Circuits have recognized that the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release, and that § 1B1.13 does not apply to cases in which a defendant files a motion for compassionate release. *See United States v. Brooker*, 976 F.3d 228, 234-36 (2d Cir. 2020) ("[T]hough motions by the BOP still remain under the First Step Act, they are no longer exclusive, and we read the Guideline as surviving, but now applying only to those motions that the BOP has made."); *United States v. McCoy*, 981 F.3d 271, 281-82 (4th Cir. 2020) ("By its plain terms, in short, § 1B1.13 does not apply to defendant-filed motions under § 3582(c)(1)(A)."); *United States v. Jones*, 980 F.3d 1098, 1108-09 (6th Cir. 2020) ("[T]he passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release."); *United States v. Gunn*, 980 F.3d 1178, 1180-81 (7th Cir. 2020) ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."). As such, the Court is not bound by § 1B1.13.

> Section 3582 sets out the order in which this Court should analyze a criminal defendant's entitlement to a sentencing reduction. *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is

> earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test . . . . And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020). Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted"). With these standards in mind, the Court considers the instant Motion.

## III. DISCUSSION

### A. Exhaustion of Administrative Remedies

On September 1, 2020, Defendant submitted a request for compassionate release and/or home confinement to the Warden at his institution. ECF No. [48-5]. On September 15, 2020, Defendant's request was denied because he did not qualify pursuant to BOP Program Statement number 5050.50. ECF No. [48-6]. Defendant filed the instant Motion on October 29, 2020, and therefore has exhausted his administrative remedies.[2]

---

[2] The Government does not dispute that Defendant has satisfied this step of the § 3582 considerations.

**B. Extraordinary and Compelling Circumstances**

Defendant argues that extraordinary and compelling circumstances exist because his health conditions coupled with the coronavirus pandemic increase his risk of severe illness or death from COVID-19. Specifically, Defendant is obese—his body mass index is 33.5 and his weight at the time of filing the Motion was 246.8 pounds. In addition, Defendant has latent tuberculosis ("LTBI"), which affects the lungs and heightens his vulnerability to COVID-19. In response, the Government concedes that Defendant's health conditions constitute extraordinary and compelling circumstances in this case. *See* Response at 9-10. Indeed, CDC guidance indicates that adults of any age with the following health conditions are at increased risk of severe illness due to COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, Down Syndrome, heart conditions, such as heart failure, coronary artery disease, and cardiomyopathies, immunocompromised from solid organ transplant, obesity, severe obesity, pregnancy, sickle cell disease, smoking, and type 2 diabetes.[3][4] Based upon Defendant's medical conditions, he has sufficiently demonstrated that extraordinary and compelling circumstances exist in his case.

In addition, FCI Marianna, where Defendant is housed, is currently reporting 62 COVID-positive inmates, and 14 COVID-positive staff.[5] Fortunately, there are no reported inmate or staff

---

[3] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020).

[4] Tuberculosis ("TB") and LTBI are not specifically identified as high risk factors by CDC guidance. However, both conditions affect the respiratory system, which is also impacted by COVID-19 (which can cause shortness of breath or difficulty breathing). *See* https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html. As a result, it stands to reason that Defendant's LTBI might affect his vulnerability to COVID-19, and the severity of his symptoms, were Defendant to contract COVID-19. The Government agrees. *See* Response at 10 n.8.

[5] https://www.bop.gov/coronavirus/ (accessed January 8, 2021).

deaths to date and BOP reports that 83 inmates and 29 staff have recovered from the virus.[6] Of a total inmate population of 558, almost 26% have contracted the virus. As such, it does not appear that current measures at FCI Marianna are effectively managing the virus.

### C. Section 3553(a) Factors

The Court must also consider the relevant § 3553(a) factors. The Government argues that the § 3553(a) factors weigh against granting Defendant relief because his release would minimize the severity of the offense of conviction, he has only served approximately half of his sentence, and his criminal history is extraordinary such that he continues to pose a danger to the community. In addition, the Government contends that Defendant has not established that he would be less vulnerable to COVID-19 if released, or that he has viable employment or a suitable home environment.[7] Defendant disagrees, arguing that if he were sentenced today, he would not be considered subject to ACCA because all but one of his prior predicate convictions no longer qualify as predicates under ACCA and thus a sentencing disparity exists. Moreover, his criminal history must be understood in a broader context, the amount served of his total sentence is not dispositive, Defendant is not safer from COVID-19 in prison, and that he would be employed and in a supportive environment if released.

The applicable sentencing factors under § 3553(a) include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[6] *Id.*

[7] The Government's suggestion that Defendant may not be any less vulnerable to COVID-19 if released lacks merit. Indeed, of a total population of 21.48 million in Florida, to date there have been 1,438,579 total cases; thus approximately 6.6% of the state's population has contracted the virus. *See QuickFacts*, United States Census Bureau, https://www.census.gov/quickfacts/FL (accessed January 10, 2021); https://covid.cdc.gov/covid-data-tracker/.

> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for—
>   (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .
> . . . .
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Nonetheless, this does not end the Court's inquiry.

> Because a defendant's sentence reflects the sentencing judge's view of the [section] 3553(a) factors at the time of sentencing, the time remaining in that sentence may — along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates — inform whether immediate release would be consistent with those factors.

*United States v. Pawlowski*, 967 F.3d 327, 331 (3d Cir. 2020).

It is undisputed in this case that the sentence jointly recommended by the parties resulted from negotiations through which Defendant was attempting to avoid a 15-year mandatory minimum sentence under ACCA, which is the reason Defendant agreed to an upward variance to 120 months from an otherwise applicable guidelines range of 18 to 24 months. Significantly, the Government does not dispute that if Defendant were subject today to the original indictment charging possession of a firearm and ammunition by a convicted felon, he would not be facing a 15-year mandatory minimum under ACCA. Indeed, after the First Step Act, to qualify as a "serious drug felony," an offense is one "for which [ ] the offender served a term of imprisonment of more than 12 months . . . ." 21 U.S.C. § 802(57)(A). In spite of Defendant's lengthy criminal history, he had not previously served a sentence of more than 364 days in jail.

The Court acknowledges that Defendant's criminal history is lengthy—it began as a juvenile, and as an adult includes multiple convictions for drug offenses, including marijuana and

9

cocaine, traffic offenses, trespass, and battery, *see* ECF No. [36] at 7-23. However, although Defendant has served a little over half of his sentence, or approximately 54 months, the time he has served exceeds the top of the advisory guidelines sentence that would apply to his originally charged offense today. Moreover, Defendant currently has a minimum BOP security classification. ECF No. [48-4].

In addition, Defendant has participated in significant educational and self-improvement efforts while incarcerated, including earning his GED, participating in numerous life skills classes, including financial planning, banking, learning about credit, parenting, communication skills, career discovery, time management, and business writing. *See* ECF No. [48-1]. Defendant has also participated in substance abuse and anger management programming, and numerous self-study courses including personal growth, the power of self-talk, handling difficult emotions, self-esteem, values for responsible living, and a series covering self-improvement topics regarding the courage to change. *See* ECF No. [48-2]. Defendant has been employed while incarcerated—in the kitchen at Estill Medium, as part of the ground crew at Yazoo Low and in the kitchen at Yazoo Camp, and most recently, as a member of the floor crew at Marianna. In order to work on the floor crew, Defendant has had to learn and apply the underlying knowledge and skill required, including ripping up tile, removing glue, grinding and smoothing floor, and then buffing the floors. He has performed this job six hours per day for five to six days a week since July of 2019. As such, it is apparent that Defendant has used the time of incarceration for self-reflection and improvement.

Additionally, the Court considers these factors in the context of Defendant's medical conditions and the extraordinary and compelling circumstances in this case. "When the Court sentenced [the defendant], the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." *United States v.*

*Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880, at *6 (S.D.N.Y. Apr. 3, 2020) (quoting *United States v. Rodriguez*, 03 Cr. 271-1, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020)). Defendant need not, as the Government suggests, demonstrate that he would be less vulnerable to COVID-19 if released, especially in light of the infection rates at FCI Marianna already highlighted by the Court.

As such, upon consideration of the entire record in this case and in light of the disparity between the applicable sentence for the offense originally charged and the sentence that Defendant has already served, the Court concludes that a sentence reduction would not be inconsistent with the goals of sentencing. *See United States v. Scott*, No. CR 1:02-00241-01, 2020 WL 4905749, at *3 (S.D. W. Va. Aug. 19, 2020). As a result, the applicable § 3553(a) factors weigh in favor of granting Defendant's Motion.

Furthermore, the Court does not find that Defendant poses a danger to the community. In reaching this conclusion, the Court considers the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g). "The factors listed in 3142(g) are largely duplicative of those in 3553(a)." *United States v. Martin*, No. CR 98-178, 2020 WL 3960433, at *6 (E.D. Pa. July 13, 2020) (quoting *United States v. Salvagno*, No. 02-51, 2020 WL 3410601, at *7 (N.D.N.Y. Apr. 23, 2020)).

As the Court previously noted, while Defendant's offense and criminal history are serious, Defendant has undertaken and accomplished a significant degree of rehabilitation during his time of incarceration. Moreover, if released, Defendant is subject to a two-year term of supervised release. In addition, Defendant's family continues to be supportive of him, and he has presented the Court with a concrete release plan. Counsel represents that if released, Defendant's sister, Nicole Larkin, is available and willing to transport Defendant from his institution to their father's home, where Defendant plans to reside, and where he would have his own room and bathroom and be able to quarantine.[8] In addition, Ms. Larkin has advised that Defendant will be able to obtain work in a landscaping job with the help of her husband, who is a superintendent of Coral Gables Park and Golf. At Defendant's sentencing, the Court had the opportunity to meet Defendant's sister, Ms. Larkin, and Defendant's father, Mr. Starling, and found both individuals to be responsible and immensely supportive and loving. The Court is confident that Defendant will have the support and resources to continue on his path toward rehabilitation.

## IV.   CONCLUSION

Accordingly, the Court finds that Defendant has sufficiently satisfied each of the compassionate release considerations. Therefore, the Motion, **ECF No. [48]**, is **GRANTED** as follows:

1. Defendant's term of imprisonment is reduced to **TIME SERVED** as of the date of this Order. The Defendant shall be placed on supervised release consistent with his previous

---

[8] The Government mentions that Defendant's father was a co-defendant in one of Defendant's battery cases in 1998, and that Defendant's father himself was later convicted of being a felon in possession of a firearm, for which he was sentenced to 87 months in prison and 3 years of supervised release. *See* Response at 14 n.13. The Government has not indicated why Defendant's father's criminal background is relevant for purposes of the instant Motion. Furthermore, to the extent that the Government's mention of Defendant's father's background is intended to suggest that the Court should not grant the Motion, the Court notes that Defendant's father completed his term of incarceration and supervised release, and since then, has been gainfully employed and even purchased a home. ECF No. [41] at 10.

Judgment and sentence, ECF No. [38]. All previous conditions imposed in the Judgment remain in full force and effect, with a special condition of supervised release that he is placed on home confinement, as set forth below:

a. **<u>Home Detention with Electronic Monitoring</u>** – Defendant shall participate in the Home Detention Electronic Monitoring Program for a period of **6 months**. During this time, Defendant shall remain at his place of residence except for employment and other activities approved in advance: work, medical appointments, church, and provide the U.S. Probation Officer with all requested documentation. Defendant shall maintain a telephone at his place of residence without "call forwarding," "call waiting," a modem, "caller ID," or "call back/call block" services for the above period. Defendant shall wear an electronic monitoring device and follow the electronic monitoring procedures as instructed by the U.S. Probation Officer. Defendant shall pay for the electronic monitoring equipment at the prevailing rate or in accordance with ability to pay.

2. Defendant's counsel shall work with the United States Probation Office to ensure that a plan of release is approved as soon as possible.

3. The Federal Bureau of Prisons is directed to release Defendant immediately to the custody of his father, Woodrow Albert Starling, after the United States Probation Office approves his release plan. Defendant is responsible for arranging his own transportation to his father's home and, once released, must proceed directly to quarantine for fourteen (14) days.

4. Defendant must report via telephone to the U.S. Probation Office **within seventy-two (72) hours** of his release from BOP custody.

Case No. 16-cr-20039-BLOOM

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 11, 2021.

_____
**BETH BLOOM
UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record